NOT FOR PUBLICATION                                (Docket Nos. 23, 30)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                               :
JEFFREY FOSTER,                :
                               :
            Plaintiff,         :   Civil No. 05-1734(RBK)
      v.                       :   OPINION
                               :
JOHN ASHCROFT, Attorney        :
General, et al.,               :
                               :
            Defendants.        :
_____:
```

**KUGLER**, United States District Judge:

This matter comes before the Court upon motion by Defendants Attorney General John Ashcroft, et al. ("Defendants"), for summary judgment of the claims of Plaintiff Jeffery Foster ("Plaintiff"), and Plaintiff's motion to file a surreply. For the reasons set forth below, Defendants' motion shall be granted and Plaintiff's motion shall be denied.

**I.   Background**[1]

Plaintiff, an associate warden at the Federal Correctional Complex in Oakdale, Louisiana, filed the above-captioned Complaint on or around December 14, 2004, in the Eastern District Court of Pennsylvania. Plaintiff, who is black, alleges that

---

[1] The facts set forth below are taken from the parties' Rule 56.1 statements of undisputed fact and are limited to those facts relevant to the disposition of the present matter.

Defendants discriminated against him by downgrading his performance evaluation from "outstanding" to "exceeds" for the period April 1, 2002, through March 31, 2003. Plaintiff claims Defendants lowered his evaluation on the basis of his race and in retaliation for a complaint he filed before the Bureau of Prisons ("BOP").

From April 1, 2001, through March 31, 2002, Foster's supervisor was Warden Joseph Haro. Warden Charles Felts replaced Warden Haro in November 2002, assuming responsibility for rating Plaintiff's work performance. Foster reported Warden Felts to the BOP Office of Internal Affairs in spring 2003, alleging various incidents and improprieties. On April 29, 2003, Warden Felts completed Foster's performance evaluation for the year of April 1, 2002, through March 31, 2003, issuing "exceeds" ratings in six categories and "outstanding" in one category, with an overall rating of "exceeds."

Plaintiff grieved the rating to Felts' supervisor, Ronald Thompson, requiring Felts to reevaluate Plaintiff's performance. Felts subsequently issued a revised evaluation with an overall rating of "outstanding" for the period. However, Thompson himself then concluded that Plaintiff was entitled only to an "exceeds" rating, and the evaluation was downgraded accordingly. Plaintiff alleges that he was actually entitled to a rating of "outstanding," and he claims that his evaluation was altered

2

because of his race and/or reports of misconduct to the Office of Internal Affairs.

## II.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n.2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003). "If the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court must enter summary judgment in favor of the moving party." Heffron, 270 F. Supp. 2d at 69 (citing Anderson, 477 U.S. at 249-50).

### III. Analysis

#### A.   Defendants' Motion for Summary Judgment

Defendants argue that downgrading Plaintiff's performance review was not an adverse employment action sufficient to establish a discrimination claim. Results of a performance evaluation do not constitute an adverse employment action unless they have some "tangible effect upon the recipient's employment." Turner v. Gonzales, 421 F.3d 688, 696 (8th Cir. 2005) (quoting Spears v. Missouri Dept. of Corrections and Human Resources, 210 F.3d 850, 854 (8th Cir. 2000) (holding that employer's action in lowering plaintiff's "performance rating from 'highly successful' to 'successful'" not actionable unless "employer subsequently

4

uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment")); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004) (quoting same); Hay v. GMAC Mortg. Corp., 2003 WL 22133801, *6 (E.D. Pa. 2003) (citing Williams v. Pennsylvania State Police-Bureau of Liquor Control Enforcement, 108 F. Supp. 2d 460, 467, n.5 (E.D. Pa. 2000)).

To constitute an adverse employment action, the negative performance review must tangibly alter the terms and conditions of employment. Thus, the mere allegation that a negative evaluation took the employee "off track for promotion and formed a basis for denying him opportunities" is too conjectural to be actionable. Turner, 421 F.3d at 696. Moreover, even "a negative impact on promotion potential do[es] not constitute an adverse employment action unless the rating actually led to the denial of the promotion." Id. (citing Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 818 (4th Cir. 1995).

In the same vein, an employee's "resulting ineligibility for a *discretionary* quality step salary increase does not render the performance rating downgrade an adverse employment action." Turner, 421 F.3d at 696 (emphasis added). However, where the result is "ineligibility for an *automatic* step salary increase" or "the performance rating downgrade directly forfeited a non-discretionary salary increase," the evaluation tangibly and

5

detrimentally altered the terms and conditions of employment and may, therefore, be actionable. Id. (emphasis added).

The plaintiff bears the burden of establishing that a negative or reduced review amounted to an adverse employment action. Williams v. Pennsylvania State Police Bureau of Liquor Control Enforcement, 108 F. Supp. 2d 460, 467 n.5 (E.D. Pa. 2000) (granting summary judgment because "Plaintiff points to no evidence that these performance evaluations prevented her from promotion or caused her to be demoted or denied her other employment"); Hay v. GMAC Mortg. Corp., 2003 WL 22133801, *6 (E.D. Pa. 2003) (granting summary judgment for failure to provide "evidence that the review had an actual impact on promotional opportunities or a reduction in salary"); Tucker v. Merck & Co., Inc., 2004 WL 1368823 (E.D. Pa. 2004) (granting summary judgment because plaintiff failed to establish that "he would automatically have received more benefits" given a better evaluation).

In this instance, Plaintiff contends that he "suffered a very real financial harm" because "performance appraisals are tied to quality step increases [("QSIs")], which translate to monetary benefits." (Opp'n at 2-3.) In support, Plaintiff proffers only his declaration, attesting that "[t]he adverse impact I received was losing money for the rest of I my [sic] career when I was not given a QSI for my outstanding performance

6

for the rating period April 1, 2002 to March 31, 2003." (Foster Decl., Mar. 7, 2006, ¶ 8.) Evidently the QSI would have resulted in an automatic salary increase. (Foster Decl., Mar. 7, 2006, ¶ 9.)

Defendants argue that the QSI itself was speculative and therefore insufficient to render the diminished performance rating an adverse employment action. In support, Defendants provide a BOP Program Statement describing the BOP awards program, including the distribution of QSIs. The Statement provides that employees who receive outstanding performance evaluations "may be" considered for QSIs, but that the QSI award first requires written nomination from a recommending official and approval by a second official. (Def. Reply, filed Mar. 24, 2006, at 2-3.) The Statement indicates that the QSI is indeed discretionary and contingent in part on external factors such as funding availability. (Def. Reply, filed Mar. 24, 2006, at 2-3.)

Plaintiff's opposition provides no indication, much less evidence, that a QSI flows inevitably from an "outstanding" performance evaluation or that downgrading Plaintiff's review had any tangible effect on a term, condition, or benefit of employment. Accordingly, Plaintiff has presented no evidence of an adverse employment action, and Defendants' motion for summary

7

judgment shall be granted.[2]

**B.   Plaintiff's Motion to File Surreply**

In his motion for leave to file a surreply, Plaintiff argues that Defendants raised the issue of the QSI's speculativeness for the first time in their reply, necessitating additional briefing. As Defendants contend in opposition to Plaintiff's motion for leave, Plaintiff's argument is entirely disingenuous, since the speculative nature of the harm goes to the heart of whether a performance evaluation amounts to an adverse action. Plaintiff has proffered no justification for his failure to address this critical issue in his initial, four-page-long opposition. A surreply is not an opportunity to rectify a woefully inadequate original brief or raise issues that should rightly have been addressed therein. Accordingly, Plaintiff's motion to file a

---

[2] Defendants argue in the alternative that they established a non-discriminatory basis for their allegedly adverse actions. However, because Plaintiff has failed to present a prima facie case, the Court will not reach Defendants' alternative argument.

Additionally, Defendants contend, and Plaintiff does not oppose, that Plaintiff's claims under the Freedom of Information Act are moot since Defendants provided the requested documents to Plaintiff on February 3, 2006. Because Plaintiff proffers no evidence or contentions to the contrary, Defendants' motion for summary judgment of Plaintiff's FOIA claims shall be granted. See Walsh v. U.S. Dept. of Veterans Affairs, 400 F.3d 535, 536 (7th Cir. 2005) (granting summary judgment because "[o]nce the government produces all the documents a plaintiff requests, her claim for relief under the FOIA becomes moot") (quoting Anderson v. U.S. Dep't of Health & Human Servs., 3 F.3d 1383, 1384 (10th Cir. 1993)).

surreply is denied.

In any event, Plaintiff's supplemental briefing and related exhibits do not establish that his performance evaluation detrimentally altered the terms or conditions of his employment. Rather, Plaintiff's surreply concedes that the QSI awards are "discretionary." (Pl. Surreply at 1-2.) He nevertheless argues that the evaluation tangibly affected his employment because QSIs are "routinely and customarily awarded in conjunction with outstanding performance evaluations." (Pl. Surreply at 1.)

However, as the sole evidence proffered to establish a "customary practice of awarding QSIs" for outstanding performance evaluations, Plaintiff provides his own affidavit[3] attesting that another associate warden, Mike Brouillette, received QSIs in conjunction with outstanding ratings in 2002 and 2003 and Plaintiff himself received a QSI after an outstanding performance rating in 2002. (Foster Decl., Mar. 28, 2006, ¶ 2-4.) Such evidence does not establish a routine practice of awarding QSIs and certain does not suggest that Plaintiff would have been automatically entitled to such an increase. Because, the QSI was discretionary, as Plaintiff himself concedes, Defendants would be entitled to summary judgment even if Plaintiff's surreply was

---

[3] As Defendants contend, this affidavit is technically unsigned. In the same vein, Defendants have failed to certify the attachments to their Reply Brief. Although both filings will be permitted to stand, all future filings must comply with the local and federal rules.

permitted to stand. Accordingly, summary judgment shall be granted.

    The accompanying Order shall issue today.

Dated: July 14, 2006      s/Robert B. Kugler
                              ROBERT B. KUGLER
                              United States District Judge